IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIAN LEE MELSON, ) | |
| ) | |
| Petitioner/ ) | |
| Consolidated Petitioner, ) | Case No. 23-CV-0336-GKF-SH |
| ) | **BASE** **FILE** |
| v. ) | |
| ) | Consolidated with: |
| WILLIAM RANKINS, Warden, ) | Case No. 23-CV-0338-GKF-SH |
| ) | and |
| Respondent/ ) | Case No. 23-CV-0339-GKF-SH |
| Consolidated Respondent. ) | |

## OPINION AND ORDER

In these consolidated habeas cases, Petitioner Brian Lee Melson seeks federal habeas relief, under 28 U.S.C. § 2254, claiming he is in state custody in violation of federal law under the criminal judgments entered against him in the District Court of Mayes County, Case Nos. CF-2016-408, CF-2017-302, and CM-2019-43.[1] Respondent moves to dismiss Melson's habeas petitions, asserting that Melson did not file them within 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations and, in the alternative, that Melson did not exhaust available state remedies before filing them, as required by 28 U.S.C. § 2254(b)(1)(A). Having carefully considered the parties' arguments, the record of state court proceedings, and applicable law, the Court finds and concludes that each petition is barred by the statute of limitations.[2] The Court therefore grants Respondent's motions and dismisses all three petitions.

---

[1] The Court liberally construes Melson's filings because he appears without counsel. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not act as his advocate. *Id.*; *see Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (discussing the rule of liberal construction and stating that "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record").

[2] Because the Court finds that each petition is time-barred, the Court declines to address the parties' arguments regarding exhaustion of available state remedies.

I.      **Preliminary motions**

In each case, Melson filed a Motion for Records, asking this Court to direct the Mayes County District Court clerk to submit to this Court various documents from the original record in each underlying criminal case and to direct the district court clerk and other Mayes County officials to submit to this Court video and audio files that Melson alleges are relevant to the claims he asserts in the petitions.  Dkt. 5, Case No. 23-CV-0336-GKF-SH; Dkt. 5, Case No. 23-CV-0338-GKF-SH; Dkt. 4, Case No. 23-CV-0339-GKF-SH.  In each case, Melson also filed a Motion to Strike, asking this Court to strike each of Respondent's dismissal motions based on Respondent's alleged violation of appellate rules Melson reads as requiring Respondent to provide Melson copies of any unpublished opinions cited in the dismissal motions.  Dkt. 17, Case No. 23-CV-0336-GKF-SH; Dkt. 17, Case No. 23-CV-0338-GKF-SH; Dkt. 17, Case No. 23-CV-0339-GKF-SH.

For two reasons, the Court denies Melson's motions.  First, in each case, Respondent has submitted the record of state court proceedings that is necessary for this Court to consider Respondent's dismissal motion.  And, as further discussed below, the Court finds and concludes that all three petitions shall be dismissed as barred by the applicable statute of limitations. Dismissal of each petition moots Melson's request for records that he claims are necessary for adjudication of the claims he asserts in each petition.  Second, Melson misreads the appellate rules he cites to support his request that this Court strike the dismissal motions.  Melson appears to allege that Respondent violated Federal Rule of Appellate Procedure 32.1(a) and Tenth Circuit Rule 32.1(A) by failing to attach to the dismissal motions copies of each unpublished decision cited in those motions.  But, as Respondent argues, the plain language of each rule imposes that requirement only when the unpublished decisions are "not available in a publicly accessible electronic database."  Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).  Each unpublished decision

Respondent cites in the dismissal motions is available to the public through an electronic database. *See* Dkt. 19, Case No. 23-CV-0336-GKF-SH, at 4-5; Dkt. 19, Case No. 23-CV-0338-GKF-SH, at 4-5; Dkt. 19, Case No. 23-CV-0339-GKF-SH, at 4-5.[3] Because Respondent did not violate the rules Melson relies upon to support his motions to strike, the Court finds no basis to strike the dismissal motions.

## II. Discussion

A state prisoner seeking federal habeas relief under 28 U.S.C. § 2254 has one year from the latest of the following four dates to file a petition for writ of habeas in federal court:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

For most prisoners the one-year limitations period runs from the date the judgment became "final" under § 2244(d)(1)(A). *Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000). For those prisoners "who pursue direct review all the way to [the United States Supreme] Court, the judgment becomes final at the 'conclusion of direct review'—when [the Supreme] Court affirms a conviction on the merits or denies a petition for certiorari." *Gonzalez v. Thaler*, 565 U.S. 134,

---

[3] For consistency, the Court's citations refer to the CM/ECF header pagination. In addition, when quoting material from Melson's filings, the Court follows conventional rules for capitalization, omits bold-face type and italics, and corrects obvious spelling errors.

150 (2012). For all other prisoners, "the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires." *Id.* If a state court permits a prisoner to file an out-of-time direct appeal, the limitations period under § 2244(d)(1)(A) will "reset," and the judgment will "become final at 'the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that [out-of-time] appeal.'" *Id.* at 149-50 (alteration in original) (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 120-21 (2009)). If a state prisoner files his or her petition more than one year after the judgment became final, the prisoner bears the burden of showing that one of the events described in § 2244(d)(1)(B), (C), or (D) triggered a later commencing limitations period. *Preston*, 234 F.3d at 1120.

Regardless of which event triggers the limitations period, statutory tolling suspends the limitations period for the "time during which a properly filed application for post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" in state court. 28 U.S.C. § 2244(d)(2). A properly filed application is one that is filed in accordance with all state law filing requirements. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Habteselassie v. Novak*, 209 F.3d 1208, 1210-11 (10th Cir. 2000). An application for state postconviction or other collateral review "remains pending until the application has achieved final resolution through the State's postconviction procedures." *Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (quoting *Carey v. Saffold*, 536 U.S. 214, 220 (2002)). A properly filed application for state postconviction relief or other collateral review, however, only tolls the limitation period if the prisoner files it before the applicable limitations period expires. *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006).

In rare circumstances, a federal court may toll the limitations period for equitable reasons. *Holland v. Florida*, 560 U.S. 631, 645 (2010). To obtain equitable tolling, the prisoner must allege

specific facts showing (1) that he was reasonably diligent in pursuing his federal claim and (2) that extraordinary circumstances prevented him from filing a timely federal habeas petition. *Id.* at 649; *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008). In even rarer circumstances, a prisoner can overcome the untimely filing of a habeas petition, and thus obtain review of his constitutional claims, by presenting a credible claim of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). This equitable exception to the statute of limitations, however, applies "to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id.* at 395 (alteration in original) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Respondent contends Melson's petitions are untimely under the one-year limitations period provided by § 2244(d)(1)(A); Melson has not shown that any other provision of § 2244(d)(1) provides a later commencing one-year limitations period; Melson has not shown that equitable tolling is warranted; and Melson has not asserted any credible claims of actual innocence that would excuse the untimeliness of his petitions. The Court agrees that the statute of limitations bars relief as to each petition.[4]

**A.     Each petition is untimely under § 2244(d)(1)(A).**

**1.     First petition (Case No. 23-CV-0336-GKF-SH)**

Melson's first petition challenges his custody under the judgment entered against him in Mayes County District Court ("MCDC") Case No. CF-2016-408. Dkt. 1, at 1. In that case, Melson

---

[4] In each petition, Melson contends that the one-year statute of limitations does not apply because "the State of Oklahoma waived all provisions of the A.E.D.P.A. when it enacted its constitution, Article I, § 3" and through the State's "own action(s) and/or inactions." Dkt. 1, Case No. 23-CV-0336-GKF-SH, at 193-97; Dkt. 1, Case No. 23-CV-0338-GKF-SH, at 66-67; Dkt. 1, Case No. 23-CV-0339-GKF-SH, at 74-75. Contrary to Melson's position, the federal statute of limitations, by its plain language, applies to all petitions filed by state prisoners seeking relief under § 2254. 28 U.S.C. § 2244(d)(1). The Court thus rejects his "waiver" argument.

pleaded no contest as to two counts of lewd molestation, in violation of Okla. Stat. tit. 21, § 1123, on September 21, 2018. Dkt. 15-1, Case No. 23-CV-0336-GKF-SH, at 24; Dkt. 15-2, Case No. 23-CV-0336-GKF-SH. That same day, the trial court imposed two terms of fifteen years' imprisonment and ordered Melson to serve them concurrently. Dkt. 15-3, Case No. 23-CV-0336-GKF-SH. Melson was afforded ten days from September 21, 2018, the date he was sentenced, to initiate a certiorari appeal by moving to withdraw his guilty plea. Okla. R. Crim. App. 4.2(A); *Clayton v. Jones*, 700 F.3d 435, 441 (10th Cir. 2012); *Elmore v. State*, 624 P.2d 78, 80 (Okla. Crim. App. 1981). Because Melson did not move to withdraw his plea, his judgment became final on October 1, 2018. *Clayton*, 700 F.3d at 441. His one-year limitations period began to run the following day, on October 2, 2018, and, absent statutory tolling, would have expired one year later, October 2, 2019. *Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011).

On January 4, 2019, after ninety-four days of his limitations period passed, Melson filed an application for postconviction relief requesting an out-of-time certiorari appeal. Dkt. 1, Case No. 23-CV-0336-GKF-SH, at 194; Dkt. 15-4, Case No. 23-CV-0336-GKF-SH. That same day, the MCDC entered an order recommending to the Oklahoma Court of Criminal Appeals ("OCCA") that Melson be granted leave to file an appeal out of time. Dkt. 15-5, Case No. 23-CV-0336-GKF-SH. Melson, however, did not file a petition for an appeal out of time in the OCCA after the MCDC recommended granting him leave to file an appeal out of time. *See* Okla. R. Crim. App. 2.1(E) (2019) (detailing procedures for obtaining an appeal out of time); *Gibson v. Klinger*, 232 F.3d 799, 807 (10th Cir. 2000) (discussing Rule 2.1(E) and explaining that "a petitioner seeking permission to appeal out of time must file an 'application for Post–Conviction Relief,' asking the state district court to grant leave to petition the appellate court," that "[t]he petitioner may then appeal the district court's grant or denial to the Oklahoma Court of Criminal Appeals,"

6

and that "[p]ermission of the state appellate court is required before a petitioner may file the actual appeal").[5] Even though Melson did not perfect an out-of-time certiorari appeal, he did toll the one-year limitations period by filing the application for postconviction relief on January 4, 2019, and the limitations period was tolled for the thirty-day period during which he could have perfected that appeal. *Gibson*, 232 F.3d at 807. With thirty days of statutory tolling, Melson had until November 4, 2019, to file a federal habeas petition.[6] Melson filed no other applications seeking postconviction relief or other collateral review in the MCDC until February 17, 2022,[7] when he

---

[5] Melson alleges he filed an appeal with the OCCA on January 10, 2019, that the OCCA appointed counsel for him, and that counsel abandoned him. Dkt. 1, Case No. 23-CV-0336-GKF-SH, at 193-94. No documents in the record support these allegations. Further, the Court takes judicial notice of appellate records available to the public through the Oklahoma State Courts Network showing that the only appellate case related to MCDC Case Nos. CF-2016-408, CF-2017-302, and CM-2019-43 is the postconviction appeal Melson filed in OCCA Case No. PC-2022-427 to challenge the MCDC's April 8, 2022, order denying the application for postconviction relief Melson filed in the MCDC on February 17, 2022. Melson v. State, No. PC-2022-427, https://www/oscn.net/dockets, last visited Feb. 20, 2024.

[6] Melson's one-year limitations period ran for ninety-four days between October 2, 2018, and January 4, 2019, and was tolled for thirty days, or until February 3, 2019. When the limitations period began to run again on February 4, 2019, Melson had 271 days left to file a timely federal habeas petition. Because that 271-day period would have expired on Saturday, November 2, 2019, Melson had until the following Monday, November 4, 2019, to file the petition. Fed. R. Civ. P. 6(a)(1)(C).

[7] Melson alleges he filed four letters and two motions for transcripts in the MCDC between May 1, 2019, and October 28, 2019, but, as he acknowledges, the MCDC docket sheet does not reflect that any of these filings were docketed. Dkt. 1, Case No. 23-CV-0336-GKF-SH, at 194. Instead, the docket sheet shows that after his deadline expired, Melson filed two letters that were docketed on November 29, 2021, a motion for transcripts that was docketed on January 20, 2022, and a motion to vacate, set aside, or correct sentence that was docketed on February 17, 2022. Dkt. 15-1, at 26. Even accepting Melson's allegations that some of his filings were received and not docketed, neither nondescript letters nor motions for transcripts are tolling motions within the meaning of § 2244(d)(2). *See Wall v. Kholi*, 562 U.S. 545, 553 (2011) (concluding that the phrase "collateral review," as used in § 2244(d)(2), "means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process"); *Sudduth v. Raemisch*, 532 F. App'x 823, 823 (10th Cir. 2013) (noting that "motions for transcripts and the like do not stop the limitations clock").

7

filed a motion to vacate, set aside, or correct sentence asserting that the State of Oklahoma lacked jurisdiction to prosecute him for crimes he committed in Indian country. Dkt. 15-6, Case No. 23-CV-0336-GKF-SH. The MCDC denied his application in April 2022, and the OCCA declined jurisdiction over his postconviction appeal in September 2022. Dkts. 15-7, 15-10, Case No. 23-CV-0336-GKF-SH. Melson filed a petition for writ of certiorari in the United States Supreme Court ("Supreme Court") in December 2022, seeking further review of the OCCA's postconviction decision, and the Supreme Court denied the petition in March 2023. Dkts. 15-11, 15-12, Case No. 23-CV-0336-GKF-SH. Melson's motion to vacate, set aside, or correct sentence, which appears to have been properly filed, did not toll the limitations period because Melson filed it well after his November 4, 2019, deadline expired. *Clark*, 468 F.3d at 714. Thus, even with the benefit of statutory tolling, the first petition, filed August 7, 2023, is untimely under § 2244(d)(1)(A).

    **2.**    **Second petition (Case No. 23-CV-0338-GKF-SH)**

Melson's second petition challenges his custody under the judgment entered against him in MCDC Case No. CF-2017-302. Dkt. 1, Case No. 23-CV-0338-GKF-SH, at 1. In that case, a jury convicted Melson of violation of a protection order, in violation of Okla. Stat. tit. 22, § 60.6, a misdemeanor.[8] Dkt. 15-1, Case No. 23-CV-0338-GKF-SH, at 15-16; Dkts. 15-2, 15-3, Case No. 23-CV-0338-GKF-SH. On May 23, 2019, the trial court imposed a one-year jail sentence and ordered that sentence to be served consecutively to the sentence imposed in MCDC Case No. CF-

---

[8] Melson also was charged with two felonies, second-degree burglary and knowingly concealing stolen property, but the jury acquitted his as to both felony charges. Dkt. 15-2, Case No. 23-CV-0338-GKF-SH.

8

2016-408 and concurrently with the sentence imposed in MCDC Case No. CM-2019-43.[9] Dkt. 15-3, Case No. 23-CV-0338-GKF-SH. Melson was afforded ten days from May 23, 2019, the date he was sentenced, to initiate a direct appeal by filing a notice of intent to appeal in the MCDC. *See* Okla. R. Crim. App. 2.1(B) (2019) (providing that notice of intent to appeal must be filed within ten days of sentencing and that "failure to timely file constitutes waiver of the right to appeal"). Because Melson did not timely file a notice of intent to appeal,[10] his judgment became final on June 3, 2019.[11] His one-year limitations period began to run the following day, on June 4, 2019, and, absent statutory tolling, expired one year later, June 4, 2020. *Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011). Melson cannot benefit from statutory tolling because his own timeline of state court proceedings and the MCDC docket sheet both show that Melson first sought postconviction relief on February 17, 2022, nearly two years after his limitations period expired. Dkt. 1, Case No. 23-CV-0338-GKF-SH, at 65-66; Dkt. 15-1, Case No. 23-CV-0338-

---

[9] Because Melson currently is serving his sentence in Case No. CF-2016-408, he is "in custody" for the purpose of challenging his judgments in Case Nos. CF-2017-302 and CM-2019-43. *See Peyton v. Rowe*, 391 U.S. 54, 67 (1968) ("[A] prisoner serving consecutive sentences is 'in custody' under any one of them[.]"); 28 U.S.C. § 2254(a) (requiring state prisoner seeking federal habeas relief to be "in custody" under challenged judgment).

[10] In a portion of the second petition that asks Melson to explain why he did not appeal to the highest state court having jurisdiction, Melson alleges he did file an appeal in Case No. CF-2017-302 but "appointed appellate counsel refused to proceed in the matter," that he "filed an out of time appeal that was completely ignored within Case Number 2016-408," and that he "attempted to file appeals in this case" but "the court and staff conspired to obstruct all his appeals stymieing his jurisdictional claims." Dkt. 1, Case No. 23-CV-0338-GKF-SH, at 6. Nothing in the record supports these allegations. As previously noted, Melson's only appellate case reflected on the Oklahoma State Courts Network regarding Case No. CF-2017-302 is his postconviction appeal in OCCA No. PC-2022-427. *See supra*, n.5.

[11] Melson's ten-day deadline for filing a notice of intent to appeal was June 2, 2019, a Sunday. He thus had until the following Monday, June 3, 2019, to file the notice. Okla. R. Crim. App. 1.5 (2019).

9

GKF-SH, at 17-18; *Clark*, 468 F.3d at 414. Thus, the second petition, filed August 7, 2023, is untimely under § 2244(d)(1)(A).

### 3. Third petition (Case No. 23-CV-0339-GKF-SH)

Melson's third petition challenges his custody under the judgment entered against him in MCDC Case No. CM-2019-43. Dkt. 1, Case No. 23-CV-0339-GKF-SH, at 1. In that case, Melson pleaded guilty as to one count of threatening to perform an act of violence, in violation of Okla. Stat. tit. 21, § 1378(B), on May 23, 2019. Dkt. 15-1, Case No. 23-CV-0339-GKF-SH, at 4; Dkts. 15-2, 15-3, Case No. 23-CV-0339-GKF-SH. That same day, the trial court imposed a six-month jail sentence and ordered that sentence to be served concurrently with the sentence imposed in MCDC Case No. CM-2017-302 and consecutively to the sentence imposed in MCDC Case No. CF-2016-408. Dkts. 15-3, 15-11, Case No. 23-CV-0339-GKF-SH. Melson was afforded ten days from May 23, 2019, the date he was sentenced, to initiate a certiorari appeal by moving to withdraw his guilty plea. Okla. R. Crim. App. 4.2(A); *Clayton*, 700 F.3d at 441; *Elmore*, 624 P.2d at 80. Because Melson did not move to withdraw his plea, his judgment became final on June 3, 2019.[12] *Clayton*, 700 F.3d at 441. His one-year limitations period began to run the following day, on June 4, 2019, and, absent statutory tolling, expired one year later, on June 4, 2020. *Harris*, 642 F.3d at 906 n.6. Melson cannot benefit from statutory tolling because his own timeline of state court proceedings and the MCDC docket sheet both show that Melson first sought postconviction relief on February 17, 2022, nearly two years after his limitations period expired. Dkt. 1, Case No. 23-

---

[12] Melson's ten-day deadline for filing a notice of intent to appeal was June 2, 2019, a Sunday. He thus had until the following Monday, June 3, 2019, to file the notice. Okla. R. Crim. App. 1.5 (2019).

CV-0339-GKF-SH, at 74-75; Dkt. 15-1, Case No. 23-CV-0339-GKF-SH, at 4; *Clark*, 468 F.3d at 714. Thus, the third petition, filed August 7, 2023, is untimely under § 2244(d)(1)(A).

B. **Melson has not shown that any other provision of § 2244(d)(1) applies.**

Melson has not met his burden to show that the one-year limitations period for filing any of his petitions began at a date later than the date his judgments became final. Generously construing the petitions, Melson appears to argue that § 2244(d)(1)(B) might apply.[13] Under that subsection, the limitations period begins to run on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). This subsection "typically applies when the state thwarts a prisoner's access to the courts, for example, by denying an inmate access to his legal materials or a law library." *Owens v. Whitten*, 637 F. Supp. 3d 1245, 1253 (N.D. Okla. 2022) (quoting *Aragon v. Williams*, 819 F. App'x 610, 613 (10th Cir. 2020)). A petitioner seeking application of § 2244(d)(1)(B) must allege specific facts showing that unconstitutional state action prevented the petitioner from filing a federal habeas petition. *See Garcia v. Hatch*, 343 F. App'x 316, 319 (10th Cir. 2009) (noting that § 2244(d)(1)(B) "applies only when a state-created 'impediment' 'prevented' an inmate from filing his application" and discussing the petitioner's burden to provide specific details explaining

---

[13] Respondent notes that Melson does not expressly argue that any provision other than § 2244(d)(1)(A) applies, but Respondent addresses whether either § 2244(d)(1)(B), (C), or (D) provided Melson a later commencing limitations period to challenge any of his criminal judgments. Dkt. 15, Case No. 23-CV-0336-GKF-SH, at 16-22; Dkt. 15, Case No. 23-CV-0338-GKF-SH, at 17-23; Dkt. 15, Case No. 23-CV-0339-GKF-SH, at 17-23. Even granting Melson the leniency afforded to self-represented litigants, the Court does not construe any petition as asserting that either § 2244(d)(1)(C) or (D) provides Melson a later commencing limitations period. As previously stated, the Court must liberally construe Melson's arguments, but it will not make arguments for him that the Court cannot reasonably infer from his pleadings. The Court does, however, agree with Respondent that some of Melson's arguments can be liberally construed as seeking application of § 2244(d)(1)(B).

how state action rendered the petitioner "incapable of filing a timely habeas petition").

In the first petition, Melson appears to allege that the OCCA or the MCDC (or both) prevented him from timely filing a federal habeas petition to challenge his judgment in MCDC Case No. CF-2016-408 by denying his request for an evidentiary hearing and requiring him to comply with state procedural rules. *See e.g.*, Dkt. 1, Case No. 23-CV-0336-GKF-SH, at 22-23 ("Because Mr. Melson was deprived of any and all evidentiary hearing(s), the State of Oklahoma created an impediment to his proceeding(s)."); *id.* at 44 ("The State courts have maliciously obstructed every post-conviction proceeding and [Melson's] trial lawyer conspired with the court and district attorney's office to stymie his appellate procedures."); *id.* at 50 ("Had the Oklahoma Court of Criminal Appeals not created a state impediment that prevented [Melson] from filing this claim before the State, the claim would have been fully exhausted."); *id.* at 165 ("Oklahoma waived all provisions of the A.E.D.P.A., [including the time lines of appeal], when the state court created an impediment in which completely barred Mr. Melson access to the court(s) and prevented him from exhausting any and all remedies." (grammar and brackets in original)); Dkt. 16, Case No. 23-CV-0336-GKF-SH, at 13 ("Because [the OCCA] refused to file my appeal out of time, I was forced to file a post-conviction. The [MCDC] violated the Oklahoma Post-Conviction Procedures Act.").

In the second and third petitions, Melson alleges that he attempted to file "appeals" in MCDC Case Nos. CF-2017-302 and CM-2019-43, that "the court and staff conspired to obstruct all his appeals," and that "this is a state created impediment." Dkt. 1, Case No. 23-CV-0338-GKF-SH, at 6; Dkt. 1, Case No. 23-CV-0339-GKF-SH, at 6. Melson also reasserts several allegations from the first petition that the state courts, as well as other state actors, prevented him from filing a timely federal habeas petition. *See e.g.*, Dkt. 1, Case No. 23-CV-0338-GKF-SH, at 38, 41-42

(alleging that "the state courts have maliciously obstructed every post-conviction proceeding and his trial lawyer conspired with the court and district attorney's office to stymie his appellate procedures" and that defense counsel abandoned him as part of a "conspiracy between the former attorney general, the district attorney's office, and the trial judge"); *id.* at 61 (asserting that the State created an impediment by preventing Melson from exhausting available state remedies); Dkt. 1, Case No. 23-CV-0339-GKF-SH, at 18 (alleging that "[b]ecause [he] was deprived of any and all evidentiary hearing(s) the State of Oklahoma created an impediment to his proceeding(s)."); *id.* at 43 (alleging a "conspiracy between the former attorney general, the district attorney's office and the trial judge" the object of which was to "stymie and/or obstruct all appellate proceeding(s) within the state court(s) to prevent pro se litigants from filing their federal habeas petition(s) before the court which raise the argument(s) of Indian jurisdiction").  As previously discussed, there is no evidence in the record to support that Melson attempted to file any direct or certiorari appeals in Case Nos. CF-2017-302 and CM-2019-43.  *See supra*, Sections II.A.2 and II.A.3 & n. 10.

Further, Melson's unsupported assertions that the State created, or conspired to create, impediments do not persuade this Court that § 2244(b)(1)(B) provided him a later commencing limitations period to challenge any of his criminal judgments.  Rather, the facts show that, within the one-year limitations period for filing a timely federal habeas petition to challenge his judgment in MCDC Case No. CF-2016-408, Melson asked the MCDC to recommend an out-of-time certiorari appeal, the MCDC promptly granted that request, and Melson did not perfect that appeal in compliance with the OCCA's procedural rules.  Melson then waited more than two years after that limitations period expired to seek postconviction relief in state court as to the judgment in that case.  The facts further show that in MCDC Case Nos. CF-2017-302 and CM-2019-43, Melson did not attempt to file any direct or certiorari appeals and did not seek postconviction relief until

13

nearly two years after his applicable one-year limitations period expired. Even assuming Melson had difficulties navigating state court procedures for perfecting an appeal out of time or exhausting state remedies, he has not shown that any unconstitutional actions by the State prevented him from timely filing any federal habeas petitions in this Court. The Court thus concludes that § 2244(b)(1)(B) does not provide Melson a later commencing limitations period as to any of his three petitions.

      C.      **Melson has not shown that his circumstances warrant equitable tolling.**

Liberally construing the petitions, Melson appears to seek equitable tolling of the one-year limitations period. As previously stated, to obtain equitable tolling, a petitioner must allege specific facts showing that he diligently pursued his federal claims and that extraordinary circumstances prevented him from timely filing a federal habeas petition asserting those claims. *Yang*, 525 F.3d at 928.

Melson appears to allege that the following circumstances are extraordinary: (1) he was "abandoned" by trial counsel during the critical ten-day period in which he could have filed an appeal in MCDC Case No. CF-2016-408, Dkt. 1, Case No. 23-CV-0336-GKF-SH, at 4-6, 102-19; Dkt. 16, Case No. 23-CV-0336-GKF-SH, at 11-12; (2) he delayed asserting some claims because he feared retaliation by "the court(s), judge(s), the Oklahoma Attorney General's Office, and/or the Governor's office," and feared that he would be beaten by law enforcement officers in Mayes County, Dkt. 1, Case No. 23-CV-0336-GKF-SH, at 23, 108, 145; (3) he is "pro se" and "dyslexic" and a "disabled combat veteran" with disabilities that "hinder his abilities to think, comprehend, write and communicate," *id.* at 12, 70, 132; and (4) neither the OCCA's unpublished opinions nor the Oklahoma Attorney General's unpublished opinions are readily available to prisoners, *id.* at

14

20 n. 28, 52-53 & n.47.[14]

In some cases, attorney abandonment can establish an extraordinary circumstance for purposes of equitable tolling. *Maples v. Thomas*, 565 U.S. 266, 283 (2012). As relevant to his first petition, Melson alleged in state court that he contacted his attorney immediately after pleading no contest in Case No. CF-2016-408, asked his attorney to file a motion to withdraw his plea, and asked his attorney to file a certiorari appeal. Dkt. 15-4, Case No. 23-CV-0336-GKF-SH. The MCDC credited these allegations and recommended that the OCCA grant Melson leave to file an appeal out of time. Dkt. 15-5, Case No. 23-CV-0336-GKF-SH. But Melson, who was then proceeding without an attorney, did not follow state procedural rules for perfecting the out-of-time certiorari appeal. Even accepting as true that Melson's attorney abandoned him during the ten-day period for initiating a certiorari appeal from MCDC Case No. CF-2016-408, the MCDC remedied that abandonment by recommending to the OCCA that Melson be granted an appeal out of time. Melson's subsequent failure to perfect the out-of-time appeal was a consequence of his own actions or inaction. Under the facts of this case, attorney abandonment does not constitute an extraordinary circumstance that would support equitable tolling.

Melson's allegations of fear, cognitive limitations, and lack of access to legal counsel or legal resources likewise do not demonstrate extraordinary circumstances. *See, e.g.*, *Alvarado v. Smith*, 713 F. App'x 739, 743 (10th Cir. 2017) (noting that a petitioner seeking equitable tolling based on alleged mental incapacity "needs to show that he had been institutionalized for mental incapacity, judged incompetent, or not capable of pursuing his own claim during the period in which he needed to file his application" and rejecting petitioner's claim that the district court

---

[14] Melson either makes most of these same allegations in the second and third petitions or attempts to incorporate those same allegations through references to the first petition. *See* Dkt.1, Case No. 23-CV-0338-GKF-SH and Dkt. 1, Case No. 23-CV-0339-GKF-SH, generally.

should have equitably tolled the statute of limitations based on petitioner's allegations that he "suffer[ed] from seizures, major depression, dementia, memory loss, auditory hallucinations, psychosis, bipolar disorder, paranoid schizophrenia, and mood swings" because petitioner had not shown either that he had been judged incompetent or that he had been institutionalized during the applicable limitations period); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999)); *Owens*, 637 F. Supp. 3d at 1253-54 (rejecting petitioner's request for equitable tolling when petitioner identified his extraordinary circumstances as his general fear of being harmed in prison, limited access to law library, lack of access to forms and papers, and lack of legal knowledge). Moreover, Melson's first petition—which is nearly 200 pages long and is accompanied by nearly 500 pages of exhibits, including several copies of legal opinions—belies Melson's allegations that he lacks access to legal resources and has cognitive limitations that significantly impair his ability to write or communicate his thoughts. *See* Dkts. 1, 1-1, 1-2, Case No. 23-CV-0336-GKF-SH.[15]

In any event, even if the Court could find that Melson's circumstances are extraordinary (which the Court does not), Melson neither explains how these circumstances prevented him from filing a timely federal habeas petition nor shows that he diligently pursued his federal claims. For these reasons, the Court finds that equitable tolling is not warranted.

**D.    Melson has not asserted any credible claims of actual innocence.**

In each petition, Melson also appears to ask this Court to apply *Perkins*'s actual-innocence exception to excuse the untimeliness of his petitions. A credible claim of innocence permits a

---

[15] Even a cursory review of his petitions, supporting exhibits, and responses to the dismissal motions shows that Melson has access to legal resources, including unpublished decisions from the OCCA and unpublished opinions from the Oklahoma Attorney General's office.

habeas petitioner to pursue his or her constitutional claims despite procedural barriers that would otherwise preclude consideration of those claims—including the barrier imposed by the one-year statute of limitations. *Perkins*, 569 U.S. at 392. But *Perkins*'s equitable exception "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id.* at 395 (alteration in original) (quoting *Schlup*, 513 U.S. at 329).

> To be credible, a claim of actual innocence requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S. Ct. 851. In assessing the adequacy of a petitioner's showing, "the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial,'" *House*, 547 U.S. at 538, 126 S. Ct. 2064 (quoting *Schlup*, 513 U.S. at 327-28, 115 S. Ct. 851). Put another way, the innocence inquiry "requires a holistic judgment about 'all the evidence,' and its likely effect on reasonable jurors applying the reasonable-doubt standard." *Id.* at 539, 126 S. Ct. 2064 (quoting *Schlup*, 513 U.S. at 328, 115 S. Ct. 851).

*Fontenot v. Crow*, 4 F.4th 982, 1031-32 (10th Cir. 2021). Evidence offered to support an actual-innocence claim is "new" if it was not presented at trial. *Id.* at 1032-33.

Melson's assertions of innocence are not supported by new evidence and are not credible. In ground twelve of the first petition, Melson asserts that he "has always maintained his actual-factual innocence," as to the lewd molestation charges underlying his convictions in MCDC Case No. CF-2016-408, and that the State "maliciously prosecuted an innocent man despite the victim, (a minor child), declaring numerous times that Mr. Melson never inappropriately touched her" and despite the prosecutor having "zero evidence" to support the charges against Melson. Dkt. 1, Case No. 23-CV-0336-GKF-SH, at 145-50. As Respondent argues, it is difficult, in any case, to demonstrate a credible claim of actual innocence and that difficulty exponentially increases when, as in this case, a petitioner enters a plea of no contest but later proclaims his innocence. Dkt. 15,

Case No. 23-CV-0336-GKF-SH, at 25; *cf. Johnson v. Medina*, 547 F. App'x 880, 885 (10th Cir. 2013) (finding habeas petitioner's guilty plea undermined his assertion of actual innocence). *Perkins*'s equitable exception does not excuse the untimeliness of the first petition.

In ground eleven of his second petition, Melson alleges he "has always maintained his actual-factual innocence," in MCDC Case No. CF-2017-302, regarding the crime of violating a protection order, and asserts that "the deputy assigned to serve the [protection order] admitted in open court and on the stand that he had never served Mr. Melson with the V.P.O." Dkt. 1, No. 23-CV-0338-GKF-SH, at 58; *see also id.* at 2 ("I was never served with a V.P.O. Therefore, I never violated any law. This was exposed in open court but the judge would never permit that evidence to be presented to the jury. I demanded a jury trial because I am innocent of the crime. The county deputy admitted in court that he never served the V.P.O. to Mr. Melson."). Melson also asserts that he never committed the offense, his jury was comprised of biased women, and the allegations against him arose from a disgruntled ex-wife. *Id.* This assertion of actual innocence is not credible because, rather than relying on any new evidence that was not presented to the jury, Melson contends that the jury was biased and thus entered a guilty verdict by ignoring the evidence that was presented at trial. At most, Melson challenges the sufficiency of the evidence to support his conviction; he does not, however credibly allege his innocence. Thus, *Perkins*'s equitable exception does not excuse the untimely filing of the second petition.

As to the third petition, it is not clear whether Melson asserts an actual-innocence claim. In ground eleven of the third petition, Melson appears to repeat his allegations from the second petition, including his allegation that "the deputy assigned to serve the [protection order at issue in MCDC Case No. CF-2017-302] admitted in open court and on the stand that he had never served Mr. Melson with the V.P.O." Dkt. 1, Case No. 23-CV-0339-GKF-SH, at 59-60. Melson also

18

repeats his assertions from the second petition, that his "conviction was solely based upon misinformation presented by the district attorney and a slanted/bias jury of women" and that the allegations against him arose "from a disgruntled ex-wife." *Id.* at 60. Even liberally construing the third petition, the Court discerns no claim of actual innocence, much less a credible claim, as to only conviction at issue in MCDC Case No. CM-2019-43: the conviction for threatening an act of violence that is based on Melson's guilty plea. By admitting his guilt in open court, Melson undermines any attempt to assert that he is actually innocent of committing this crime. *See Johnson*, 547 F. App'x at 885 (finding habeas petitioner's guilty plea undermined his assertion of actual innocence). Melson has not shown that *Perkins*'s equitable exception excuses the untimeliness of his third petition.

### III. Conclusion

The Court concludes that 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations bars relief as to each of Melson's petitions. The Court therefore grants Respondent's dismissal motions and dismisses the petitions. The Court further concludes that no certificate of appealability shall issue under 28 U.S.C. § 2253 because the statute of limitations presents a plain procedural bar that precludes relief as to each petition. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.").

**IT IS THEREFORE ORDERED** that:

1. Melson's motions for records (Dkt. 5, Case No. 23-CV-0336-GKF-SH; Dkt. 5, Case No. 23-CV-0338-GKF-SH; and Dkt. 4, Case No. 23-CV-0339-GKF-SH) are **denied**.

2. Melson's motions to strike (Dkt. 17, Case No. 23-CV-0336-GKF-SH; Dkt. 17, Case No. 23-CV-0338-GKF-SH; and Dkt. 17, Case No. 23-CV-0339-GKF-SH) are **denied**.

3. Respondent's motions to dismiss (Dkt. 14, Case No. 23-CV-0336-GKF-SH; Dkt. 14, Case No. 23-CV-0338-GKF-SH; and Dkt. 14, Case No. 23-CV-0339-GKF-SH) are **granted**.

4. Melson's petitions for writ of habeas corpus (Dkt. 1, Case No. 23-CV-0336-GKF-SH; Dkt. 1, Case No. 23-CV-0338-GKF-SH; and Dkt. 1, Case No. 23-CV-0339-GKF-SH) are **dismissed with prejudice** as all three are barred by the applicable one-year statute of limitations.

5. A certificate of appealability is **denied**, as to each petition.

6. A separate judgment shall be entered in this matter.

7. The Clerk of Court shall file a copy of this Opinion and Order and the corresponding Judgment in Case No. 23-CV-0338-GKF-SH and Case No. 23-CV-0339-GKF-SH.

**DATED** this 21st day of February, 2024.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE